1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN WILLIAM THOMPSON,

          Plaintiff,

    v.

ERIC RAZAVI, et al.,

          Defendants.

Case No. 5:20-cv-04292 EJD (PR)

**ORDER GRANTING DEFENDANT TARRARA'S MOTION FOR SUMMARY JUDGMENT**

(Docket No. 44)

      Plaintiff, a California state prisoner proceeding *pro se*, filed this civil rights action

pursuant to 42 U.S.C. § 1983 against medical personnel at Correctional Training Facility

("CTF") in Soledad and at the California Health Care Facility ("CHCF") in Stockton,

where he is currently incarcerated.[1]  Dkt. No. 1.[2]  The amended complaint, Dkt. No. 12, is

the operative complaint in this matter.  See Dkt. No. 13.[3]  The Court found that Plaintiff's

---

[1] On June 29, 2020, the Eastern District of California transferred the matter here because a substantial part of the allegations took place in Monterey County, which lies in the Northern District.  Dkt. Nos. 5, 6.  The matter was originally assigned to Magistrate Judge Jacqueline Scott Corley, who ordered the matter reassigned to a district judge.  Dkt. No. 7.  The matter was reassigned to this Court on July 13, 2020.  Dkt. No. 8.

[2] All page references herein are to the Docket pages shown in the header to each document and brief cited on ECF, unless otherwise indicated.

[3] The Court dismissed a claim against Defendant Dr. Singh at the California Health Care Facility in Stockton as being improperly joined to this action under Federal Rule of Civil Procedure 20(a)(2).  Dkt. No. 10 at 3.  Plaintiff was directed to pursue the claim in a separate action in the Eastern District of California.  Id.

United States District Court
Northern District of California

1   amended complaint, Dkt. No. 12, stated cognizable Eighth Amendment claims against

2   three Defendants.  Dkt. No. 13 at 2.  The Court granted summary judgment in favor of two

3   of the Defendants, Dr. Eric Razavi, DDS and Dr. Mary Sweet, MD.  Dkt. No. 41.

4          The remaining Defendant, Dr. Tarrara, MD, has filed a motion for summary

5   judgment on grounds that Plaintiff failed to exhaust available administrative remedies as to

6   Plaintiff's claims against Defendant Tarrara.[4]  Dkt. No. 44.  Plaintiff responded, Dkt. No.

7   49, and Defendant Tarrara has replied, Dkt. No. 50.

8          For the reasons set forth below, Defendant Tarrara's motion is **GRANTED**.

9

10                                    **DISCUSSION**

11   **I.    Statement of Facts[5]**

12         Defendant Tarrara was Plaintiff's primary care physician at CTF during the relevant

13   time frame in 2016.  Dkt. No. 12 at 4; Dkt. No. 44-2 at 18.  In about May 2016, Defendant

14   Tarrara discontinued one of Plaintiff's pain medications, known as Gabapentin.[6]

15   Defendant Tarrara recommended continuing Morphine and Ibuprofen for pain.  Dkt. No.

16   44-2 at 18.

17         On August 1, 2016, Plaintiff submitted a grievance asking to have the Gabapentin

18   medication reinstated "and/or be seen by a specialist for surgery."  Dkt. No. 44-2 at 7, 14,

19   16.  Plaintiff stated he had been prescribed Gabapentin since 2008 and he was

20   experiencing severe pain since the Gabapentin was discontinued.  Id. at 16.  Plaintiff

21   claimed Defendant Tarrara lied to Plaintiff about the availability of Gabapentin, and that

22

23   [4] Because of delays in identifying and serving Defendant Tarrara, Dkt. No. 12, Dkt. No.

24   40, his motion for summary judgment was filed more than six months after the motion
     filed by Defendants Razavi and Sweet.  Dkt. No. 36, Dkt. No. 41.

25   [5] The following facts are not disputed unless otherwise stated.

26   [6] Plaintiff refers to this medication as "Neurontin," Dkt. No. 44-2 at 14, 16, whereas
     Defendant Tarrara uses the name "Gabapentin," Dkt. No. 44-2 at 18.  Because Neurontin is
     merely a trade name for the chemical compound Gabapentin, the Court will use the term

27   "Gabapentin."  See https://en.wikipedia.org/wiki/Gabapentin ;
     https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=browseByLetter.page&p

28   roductLetter=N .

United States District Court
Northern District of California

1    Plaintiff had informed Defendant Tarrara that he had been on a number of other

2    medications, but they were ineffective and "just make my head & balance off." Id.

3    Plaintiff complained that Defendant Tarrara refused to review the MRI that Plaintiff had

4    won in response to an earlier grievance. Id. Dr. Tarrara repeatedly "tried to take more

5    meds or change my medical status so he don[']t have to review my medical appliance

6    chrono." Id.

7          In Plaintiff's amended complaint, he has also alleged that Defendant Tarrara

8    accused him of "malingering for narcotics" and "faking it."[7] Dkt. No. 12 at 4. According

9    to Plaintiff, such assumptions about Plaintiff's motives caused delays in his ultimate

10   surgical treatment. Id.

11         On September 12, 2016, Plaintiff was interviewed about his grievance by R.

12   Branch, M.D., who is a Physician and Surgeon and Primary Care Physician. Dkt. No. 44-2

13   at 18. On September 14, 2016, Dr. Branch issued a first level response denying the portion

14   of Plaintiff's grievance complaining about Defendant Tarrara's order to stop Gabapentin.

15   Id. at 18-19. According to Dr. Branch's reasoning, Defendant Tarrara discontinued

16   Gabapentin based on Plaintiff's exam and history as of May 2016. Id. at 18. In the

17   interim, Plaintiff had undergone a surgical procedure (Laminectomy) in August 2016 to

18   treat a spinal abscess.[8] Id. Dr. Branch advised Plaintiff to discuss his medication regimen

19   with his current Primary Care Physician (no longer Defendant Tarrara) because Plaintiff's

20   medical condition had changed. Id.

21         In the same August 1, 2016 grievance, Plaintiff also asked to be seen by a surgical

22   specialist for pain in his back and leg and several issues with his spinal cord. Id. at 7, 14.

23   _____

24   [7] In his amended complaint, Plaintiff made these allegations jointly against both Defendant
     Tarrara and Defendant Sweet. Dkt. No. 12 at 4 (Defendant Sweet was substituted for
25   former Doe Defendant, id. at 2). However, Plaintiff's grievance names only Defendant
     Tarrara as the person who decided to discontinue Gabapentin. Dkt. No. 44-2 at 16. In its
26   order granting summary judgment to Defendant Sweet, the Court found that Defendant
     Sweet was an emergency room doctor, not a primary care physician, and thus had a
27   different role than Defendant Tarrara. Dkt. No. 41 at 3.
     [8] Plaintiff was "admitted to NMC 8/11/16 - 8/26/16" for the surgical procedure. Dkt. No.
28   44-2 at 18.

1    Dr. Branch indicated that Plaintiff's second grievance issue, to see a surgical specialist,

2    had been granted in the form of the surgical treatment Plaintiff had received in August

3    2016.  Id. at 18.  Thus, Plaintiff's grievance was deemed partially granted – i.e., as to

4    Plaintiff's request for surgical evaluation.  Id. at 18, 19.  Dr. Branch's response informed

5    Plaintiff of his right to appeal Dr. Branch's first level response to the Health Care Appeals

6    Coordinator within 30 days.  Id. at 19.  Plaintiff did not appeal the first level response to

7    his grievance.[9]  Dkt. No. 44-1 at 3 ¶¶ 8, 9; Dkt. No. 44-2 at 7 (Tracking Number CTF HC

8    16044353).

9            In his response to Defendant Tarrara's motion, Plaintiff points to a grievance that he

10   initiated in November 2019.  Dkt. No. 49 at 2; Dkt. No. 49-1 at 2-4.  Plaintiff exhausted

11   the 2019 grievance.  Dkt. No. 49-1 at 6-7.  Defendant Tarrara replies that Plaintiff's 2019

12   grievance was untimely, and "concerned a wholly different time period, other medical

13   staff, and different conditions than the circumstances surrounding Defendant Tarrar[a]'s

14   alleged actions identified in the operative complaint."  Dkt. No. 50 at 3 (referencing Dkt.

15   No. 49-1 at 2-4).  The events Plaintiff complained of in his 2019 grievance also occurred at

16   a different facility.  Id.  Plaintiff's 2019 grievance complained about "systemic behavior"

17   and specific issues with his then-current Primary Care Provider.  Dkt. No. 49-1 at 2.  The

18   2019 grievance did not mention Defendant Tarrara, nor identify any specific actions taken

19   by Defendant Tarrara.  Id.  Defendant Tarrara argues that Plaintiff's 2019 grievance was

20   unrelated to the issues that Plaintiff has raised against Defendant Tarrara in this lawsuit.

21   Dkt. No. 50 at 4.  Defendant also argues that the 2019 grievance did not give prison

22   officials any kind of notice regarding Plaintiff's issues with Defendant Tarrara's conduct in

23

24   _____

25   [9] Plaintiff's response hints at the possibility that Plaintiff may have affirmatively decided
     against appealing Dr. Branch's first level response because Plaintiff's new Primary Care
26   Physician did renew the Gabapentin prescription.  Dkt. No. 49 at 3 ("The Plaintiff allowed
     CDCR-602-HC, Log No. 16044353, to be dismissed at the first level of review by staff
27   physician, Dr. R. Branch, because his Neurontin (Gabapentin) was renewed[.]" [emphasis
     marks in original omitted]).  However, as the thrust of Plaintiff's response is to dispute
28   Defendant Tarrara's failure to exhaust defense, the Court here addresses the merits of
     Plaintiff's arguments.

United States District Court
Northern District of California

2016.  Id.

In addition, Plaintiff argues that he submitted "numerous" health care service request forms - *i.e.*, "sick call slips," requesting emergency medical care and urgent dental care for a cracked tooth.[10]  Dkt. No. 49 at 3; Dkt. No. 49-1 at 11-19.  Defendant Tarrara replies that sick call slips are not grievances.  Dkt. No. 50 at 1-2.

Finally, Plaintiff claims that he could not timely appeal the first level response to his 2016 grievance,[11] because he was in the hospital undergoing emergency surgery.  Id. at 4.  Plaintiff does not explain what that emergency surgery entailed, nor exactly when it occurred, nor why the hospital stay precluded him from timely appealing the first level response to the 2016 grievance.[12]  Id.  Defendant Tarrara does not reply to this final argument.

## II.    **Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the

---

[10] Plaintiff claims all his sick call slips were ignored, and that Defendant Razavi, as staff dentist, was negligent in failing to respond and in his provision of dental care.  Dkt. No. 49 at 3-4.  This line of argument is clearly inapplicable to Plaintiff's claim against Defendant Tarrara.

[11] This argument is presumed to refer to Plaintiff's 2016 grievance, even though Plaintiff does not explicitly so state.  Dkt. No. 49 at 4.

[12] If this is a reference to the surgery Plaintiff underwent in August 2016, that surgery preceded the first level response to Plaintiff's grievance and would not have impeded any appeal of the first level response.

5:20-cv-04292 EJD
Order Granting Motion for Summary Judgment

1   evidence is such that a reasonable jury could return a verdict for the nonmoving party."

2   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

3       Generally, the moving party bears the initial burden of identifying those portions of

4   the record which demonstrate the absence of a genuine issue of material fact.  See Celotex

5   Corp., 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue

6   at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

7   than for the moving party.  But on an issue for which the opposing party will have the

8   burden of proof at trial, the moving party need only point out "that there is an absence of

9   evidence to support the nonmoving party's case."  Id. at 325.  If the evidence in opposition

10  to the motion is merely colorable, or is not significantly probative, summary judgment may

11  be granted. See Liberty Lobby, 477 U.S. at 249-50.

12      The burden then shifts to the nonmoving party to "go beyond the pleadings and by

13  her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

14  file,' designate specific facts showing that there is a genuine issue for trial.'"  Celotex

15  Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this

16  showing, "the moving party is entitled to judgment as a matter of law."  Id. at 323.

17      The Court's function on a summary judgment motion is not to make credibility

18  determinations or weigh conflicting evidence with respect to a material fact.  See T.W.

19  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The

20  evidence must be viewed in the light most favorable to the nonmoving party, and the

21  inferences to be drawn from the facts must be viewed in a light most favorable to the

22  nonmoving party.  See id. at 631.  It is not the task of the district court to scour the record

23  in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir.

24  1996).  The nonmoving party has the burden of identifying with reasonable particularity

25  the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to do so,

26  the district court may properly grant summary judgment in favor of the moving party.  See

27  id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29

28

United States District Court
Northern District of California

1    (9th Cir. 2001).

2         The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321

3    (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be

4    brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

5    law, by a prisoner confined in any jail, prison, or other correctional facility until such

6    administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

7    Exhaustion is mandatory and no longer left to the discretion of the district court.

8    Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v. Churner, 532 U.S. 731, 739

9    (2001)).  An action must be dismissed unless the prisoner exhausted available

10   administrative remedies before he filed suit.  See McKinney v. Carey, 311 F.3d 1198, 1199

11   (9th Cir. 2002).

12        The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

13   otherwise procedurally defective administrative grievance or appeal."  Woodford, 548 U.S.

14   at 84.  "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term

15   'exhausted' to mean what the term means in administrative law, where exhaustion means

16   proper exhaustion."  Id. at 92.  Therefore, the PLRA exhaustion requirement requires

17   proper exhaustion.  Id.  "Proper exhaustion demands compliance with an agency's

18   deadlines and other critical procedural rules because no adjudicative system can function

19   effectively without imposing some orderly structure on the course of its proceedings."  Id.

20   at 90-91 (footnote omitted).  Compliance with prison grievance procedures is all that is

21   required by the PLRA to "properly exhaust."  Jones v. Bock, 549 U.S. 199, 217-18 (2007).

22   A prisoner must complete the administrative review process in accordance with the

23   applicable procedural rules, including deadlines, as a precondition to bringing suit in

24   federal court.  Id.

25        The California Department of Corrections and Rehabilitation ("CDCR") provides

26   its inmates and parolees the right to appeal administratively "any departmental decision,

27   action, condition, or policy which they can demonstrate as having an adverse effect upon

28

United States District Court
Northern District of California

their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Since August 1, 2008, health care appeals/grievances involving inmate medical, dental, and mental health care issues are processed by the California Correctional Health Care Services ("CCHCS"), and more specifically, the Health Care Correspondence and Appeals Branch ("HCCAB"). Dkt. No. 44 at 6. The HCCAB receives, reviews, and maintains all health care appeals/grievances accepted for the final (headquarters) level of review in the inmate health care appeal/grievances process, and renders decisions on such appeals/grievances. Id.

Before September 1, 2017, all inmate grievances about health care were governed by California Code of Regulations, title 15, §§ 3084-3086. To submit an administrative grievance, an inmate must use an Inmate/Parolee Appeal on CDCR Form 602 (grievance form) to "describe the specific issue under appeal and the relief requested." Id. § 3084.2(a). The form requires the inmate to identify by name and title or position, each staff member alleged to be involved in the action or decision being appealed, along with the dates each staff member was involved in the issue being appealed. Id. § 3084.2(a)(3). If this information is not available, the inmate must provide any other available information that would assist the Appeals Coordinator in identifying the staff member. Id. Under the former regulations, health care appeals were subject to three levels of administrative review before administrative remedies were deemed exhausted.[13] Id. Because the underlying events of Plaintiff's claims took place in 2016, he was required to comply with these former regulations to exhaust administrative remedies.

Failure to exhaust under the PLRA is "an affirmative defense the defendant must

---

[13] As of September 1, 2017, CCHCS implemented new regulations for health care grievances. Under the current regulations, in order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through two levels of appeal: an institutional level of review and a headquarters level of review. Cal. Code Regs. tit. 15 §§ 3999.26(a)(1) (2019). Like the former regulations, § 3999.228(g) requires inmates to "document clearly and coherently all information known and available" to the inmate when preparing and submitting a health care grievance. Health care grievances are subject to a headquarters' disposition before administrative remedies are deemed exhausted. Id. § 3999.226(g) (2019).

United States District Court
Northern District of California

1    plead and prove." <u>Jones</u>, 549 U.S. at 204, 216.  Defendants have the burden of raising and

2    proving the absence of exhaustion, and inmates are not required to specifically plead or

3    demonstrate exhaustion in their complaints.  <u>Id.</u>  at 215-17.

4        The defendant's burden is to prove that there was an available administrative

5    remedy and that the prisoner did not exhaust that available administrative remedy.  <u>Albino</u>

6    <u>v. Baca</u>, 747 F.3d 1162, 1172, 1176 (9th Cir. 2014) (en banc).  Once the defendant has

7    carried that burden, the prisoner has the burden of production.  <u>Id.</u> at 1172.  That is, the

8    burden shifts to the prisoner to come forward with evidence showing that there is

9    something in his particular case that made the existing and generally available

10   administrative remedies effectively unavailable to him.  <u>Id.</u>  But as required by <u>Jones</u>, the

11   ultimate burden of proof remains with the defendant.  <u>Id.</u>

12       Viewing the undisputed evidence in the light most favorable to Plaintiff, the Court

13   finds that Plaintiff failed to properly exhaust administrative remedies for his claim against

14   Defendant Tarrara.  At the time of the underlying incident, the CDCR regulations provided

15   that exhaustion of administrative remedies requires a prisoner to submit Form 602HC

16   through three levels of appeal, concluding with the third level of review.  Cal. Code Regs.

17   tit. 15, § 3084.7.  Plaintiff did not pursue his 2016 grievance against Defendant Tarrara

18   beyond the first level of review.  Plaintiff has failed to support his conclusory assertion that

19   he was unable to appeal because of an emergency hospital stay, and thus fails to meet his

20   burden under <u>Albino</u>, 747 F.3d at 1172.

21       Plaintiff cannot rely on his sick call slips in lieu of proper exhaustion of an available

22   administrative remedy.  <u>Jones</u>, 549 U.S. at 217-18; <u>Woodford</u>, 548 U.S. at 84.  Under the

23   former regulations which apply to this action, Plaintiff was required to use specific

24   grievance forms to address his issues to prison officials.  <u>Id.</u>  Sick call slips are not the

25   same as, and are not a substitute for, the grievance forms that prison officials have

26   designated as the means to properly initiate a grievance.  The very fact that Plaintiff did

27   properly initiate a timely grievance, using the correct form, renders Plaintiff's argument

28

United States District Court
Northern District of California

1   about his sick call slips superfluous.

2           The grievance that Plaintiff exhausted in 2019 cannot serve as a substitute for

3   proper exhaustion of the timely grievance that Plaintiff initiated in 2016.  The 2019

4   grievance did not even mention Defendant Tarrara, and was initiated tardy by a time frame

5   measured in years.  Plaintiff did initiate a timely grievance in 2016, describing the issues

6   which form the basis for Plaintiff's claim against Defendant Tarrara in this lawsuit.

7   However, Plaintiff simply and clearly failed to pursue this 2016 grievance against

8   Defendant Tarrara through all available levels of review, thereby failing to exhaust the

9   matter.

10          Based on the foregoing, Defendant Tarrara has shown that Plaintiff failed to

11  properly exhaust all available administrative remedies with respect to the Eighth

12  Amendment claim against him.  Plaintiff has not shown that he was incapable of filing a

13  timely appeal of the first level response to his 2016 grievance.  Accordingly, Defendant

14  Tarrara is entitled to summary judgment under Rule 56 based on Plaintiff's failed to

15  exhaust administrative remedies.

16

17                                  **CONCLUSION**

18          For the reasons stated above, Defendant Tarrara's motion for summary judgment is

19  **GRANTED**.  Dkt. No. 44.  Plaintiff's claim against Defendant is DISMISSED for failure

20  to exhaust administrative remedies.

21          This order terminates Docket No. 44.

22          **IT IS SO ORDERED.**

23  **Dated:**   February 27, 2023

24                                          EDWARD J. DAVILA
                                            United States District Judge
25

26

27

28

                                10                      5:20-cv-04292 EJD
                                                        Order Granting Motion for Summary Judgment

United States District Court
Northern District of California